# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
### ASHEVILLE DIVISION
### 1:21-cv-00149-MOC-WCM

| | |
|---|---|
| **WILLIAM ORR,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | ORDER |
| ) | |
| **UNITED STATES ENVIRONMENTAL** ) | |
| **PROTECTION AGENCY, et al.,** ) | |
| ) | |
| ) | |
| Defendants. ) | |

**THIS MATTER** is before the Court on Plaintiff's Motion for Temporary Restraining Order (Doc. No. 3, "TRO").

Plaintiff filed his Complaint in this action against Defendants on June 7, 2021, seeking, *inter alia*, a temporary and preliminary injunction (1) enjoining the Environmental Protection Agency ("EPA") to comply with 16 U.S.C. Section 1536(d) with regards to its interim-registration of glyphosate until the EPA has concluded all requisite Section 1536(a)(2) consultation with the U.S. Fish and Wildlife Service ("USFWS"), (2) enjoining EPA to commence its requisite § 1536(a)(2) consultation with USFWS if it has not already done so, (3) enjoining French Broad Electric Membership Corporation ("FBEMC") and Jeff Loven—as General Manager of FBEMC—from spraying EPA registered Rodeo and Polaris or any glyphosate herbicide as part of FBEMC's vegetative/tree clearing program of its Right-of-Way ("ROW") easements on or near Roan Mountain, NC until EPA concludes the above consultation with USFWS, (4) enjoining FBEMC from spraying any glyphosate herbicide as part of its

vegetative/tree clearing program of its ROW easements on or near Roan Mountain, NC where said spraying irreparably harms/kills/takes Endangered Species Act ("ESA") listed species or adversely harms/modifies their habitats such that the action constitutes an illegal "Take" under Section 9 of the ESA, and (5) enjoining EPA from illegally "Taking" listed species on Roan Mountain under Section 9 of the ESA.

Upon considering the arguments presented by both parties, this Court denies Plaintiff's request for a TRO. Plaintiff may proceed with this case after this denial. Today, the Court simply finds that Plaintiff has not presented evidence sufficient to satisfy the four factors of the <u>Winter</u> test to grant the "extraordinary remedy" of a temporary restraining order. Of those four factors, the Court especially emphasizes that Plaintiff has not presented sufficient evidence that his claim is likely to succeed on the merits. The Court does not doubt the sincerity of Plaintiff's objections to FBEMC's spraying of herbicides on or near Roan Mountain. As someone who lives among and regularly observes plant and animal species on Roan Mountain, Plaintiff has presented evidence and arguments that indicating that species on the mountain are in fact struggling. The Court is also troubled by FBEMC's continued refusal to consider using a less harmful herbicide or other method to maintain its ROW and is further concerned that Federal Defendants have moved slowly to review glyphosate herbicides or consult with one another to prevent the taking of endangered species on Roan Mountain. However, the Court does not intervene today to stop FBEMC from its spraying or to compel Federal Defendants to take any action.

## I.    BACKGROUND

### 1. Endangered Species Act

As noted, Plaintiff alleges that Defendants have violated the Endangered Species Act ("ESA"), which protects threatened or endangered species. 16 U.S.C. § 1533. The Secretaries of

Commerce and the Interior share responsibility for implementing the ESA. The Secretary of the Interior, acting through the USFWS, has responsibility over terrestrial and inland fish species. See id. § 1532(15); 50 C.F.R. §§ 17.11, 402.01(b). The Secretary of Commerce, acting through the National Marine Fisheries Service ("NMFS"), has responsibility over marine species (including anadromous salmonids), none of which are at issue in this case.

Section 7 of the ESA directs federal agencies to ensure, in consultation with USFWS or NMFS (the "consulting agency"), that "any action authorized, funded, or carried out by such agency . . . is not likely to jeopardize the continued existence of" any listed species or destroy or adversely modify designated critical habitat. 16 U.S.C. § 1536(a)(2). The term "action" is defined as "all activities or programs of any kind authorized, funded, or carried out, in whole or in part, by Federal agencies in the United States or upon the high seas." 50 C.F.R. § 402.02. Section 7 applies to "all actions in which [the Federal agency has] discretionary Federal involvement or control." Id. § 402.03. If the agency proposing the relevant action ("action agency") determines that the action "may affect" listed species or critical habitat, Section 7 requires the action agency to consult with either USFWS or NMFS, depending on the species. Id. §§ 402.13-402.14. The purpose of consultation is to determine whether the proposed action is likely to "jeopardize the continued existence of" any listed species or destroy or adversely modify the critical habitat of such species. 16 U.S.C. § 1536(a)(2); 50 C.F.R. § 402.14.

Unlike Section 7, which applies only to federal agency actions, Section 9 of the ESA makes it unlawful for any person to "take" endangered species or engage in other prohibited acts regarding species protected under the ESA. 16 U.S.C. § 1538(a)(1)(B). To "take" means to "harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect, or to attempt to engage in any such conduct" that would affect an endangered species. Id. § 1532(19). A person—

defined to include, among other things, a corporation or partnership, see id. § 1532(13)—may apply for a permit pursuant to ESA Section 10 to "take" a protected species without facing potential liability under Section 9 if the potential taking is incidental to, and not the purpose of, the carrying out of an otherwise lawful activity. Id. § 1539(a)(1)(B), (2). This is known as an "Incidental Take Permit." If an individual knowingly commits one of the prohibited acts under Section 9 without an Incidental Take Permit, they "may be assessed a civil penalty" by USFWS or face criminal prosecution. Id. § 1540(a)(1), (b).

Finally, the ESA authorizes private citizen suits based on ESA violations. The ESA citizen-suit provision allows any person to commence a civil suit, in relevant part, to "enjoin any person . . . alleged to be in violation of" the ESA or its regulations. Id. § 1540(g)(1)(A). A person can commence a citizen suit under this provision only if they provide written notice of the violation at least sixty days before filing suit to the Secretary and any alleged violator of the ESA. Id. § 1540(g)(2)(A).

## 2. FIFRA

The Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), 7 U.S.C. §§ 136-136y, governs the sale, distribution, and use of pesticide active ingredients and pesticide products. The Act makes it unlawful, subject to certain exceptions, for any "person in any State [to] distribute or sell to any person any pesticide that is not registered" under the Act. 7 U.S.C. § 136a(a); see also 7 U.S.C. § 136j(a)(1)(A). EPA will only register a pesticide active ingredient or pesticide product if, *inter alia*, "it will not generally cause unreasonable adverse effects on the environment." 7 U.S.C. § 136a(c)(5).

Congress included a provision in FIFRA that requires EPA to continuously review registered pesticides every 15 years (a process known as registration review). Id. § 136a(g); see

<u>also</u> 40 C.F.R. pt. 155. During registration review, EPA examines data to determine whether registered pesticides still meet FIFRA's requirements, including the requirements that the pesticide perform without "unreasonable adverse effects" on the environment. EPA will create a "registration review case" for one or more active ingredients in a pesticide and all of the products containing such ingredients, establish a docket for public participation, and provide an opportunity for comment. 40 C.F.R. §§ 155.42, 155.50. In the course of a registration review, EPA may determine that certain label restrictions are appropriate. <u>See</u> <u>id.</u> § 155.58(b)(2), (4).

EPA need not tackle the entirety of the registration review at once, but rather may make an "interim registration review decision." <u>Id.</u> § 155.56. "Among other things, the interim registration review decision may require new risk mitigation measures, impose interim risk mitigation measures, identify data or information required to complete the review, and include schedules for submitting the required data, conducting the new risk assessment and completing the registration review." <u>Id.</u>

A FIFRA registration remains effective until EPA cancels it, which is a statutorily defined administrative action subject to specific safeguards. <u>See</u> 7 U.S.C. § 136d(b); 40 C.F.R. § 155.40; <u>Reckitt Benckiser Inc. v. EPA</u>, 613 F.3d 1131, 1134 (D.C. Cir. 2010). Congress provided that pesticide registrations shall not be cancelled "as a result of the registration review process unless [EPA] follows the procedures and substantive requirements" for cancellation set forth in Section 136d. <u>Id.</u> § 136a(g)(1)(A)(v).

### 3. Plaintiff's Factual Allegations

Plaintiff alleges that he lives on Roan Mountain in North Carolina. (Doc. No. 1, Complaint ("Compl.") at 6). He further alleges that he enjoys a conservational and scientific interest in a number of species of flora and fauna on Roan Mountain, including species listed as

endangered or threatened such as the "Rusty Patch Bumble Bee." (Compl. at 90-94). Plaintiff

seeks an emergency TRO to enjoin FBEMC and Jeff Loven, personally and as General Manager

of FBEMC, from spraying its right-of-way easements on Roan Mountain with herbicides

containing glyphosate, which Plaintiff alleges FBEMC is planning to conduct until at least July

of 2021. (TRO at 1, 6).

Plaintiff contends that the use of herbicides containing glyphosate adversely affects a

number of species that live on Roan Mountain that are listed as either threatened or endangered

under the ESA. (Id. at 3). Plaintiff reasonably believes that this spraying will resume again

sometime in the not-too-distant future, even after this current round of spraying concludes. (Id. at

6).

Plaintiff also generally claims that, with respect to its registration of herbicides

containing glyphosate under FIFRA, EPA failed "to enforce 16 U.S.C. § 1536(d) in a §

1536(a)(2) consultation" with USFWS. (TRO at 2). Plaintiff further alleges that by continuing to

allow herbicides containing glyphosate to be registered under FIFRA, EPA is allowing "takes" of

endangered species under the ESA. (Id.). Plaintiff does not appear to raise any allegations

regarding Federal Defendant the U.S. Forest Service.

### 4. Glyphosate Registration Review

Glyphosate is an active ingredient found in various pesticide/herbicide products. It is the

most commonly used agricultural herbicide in the United States. The first pesticide product

containing glyphosate was registered in 1974.[1] See https://www.epa.gov/ingredients-use d-

---

[1] "A federal court may take judicial notice of factual information located in postings on
governmental websites in the United States." Johnson v. Clarke, No. 7:12-CV-00410, 2012 WL
4503195, at *2 n.1 (W.D. Va. Sept. 28, 2012) (citations omitted); Williams v. Long, 585 F.
Supp. 2d 679, 686-88 & n.4 (D. Md. 2008) (collecting cases indicating that postings on

pesticide-products/glyphosate (last visited June 11, 2021). Pursuant to the registration review

mandate, EPA formally initiated registration review for glyphosate in 2009. Id. In April 2019,

after reviewing the public comments on previously released risk assessments, EPA released the

glyphosate Proposed Interim Decision for public comment. See https://www.epa.gov/ingredie

nts- used-pesticide-products/proposed-interim-registration-review-decision-and-responses-0 (last

visited June 15, 2021).

On January 22, 2020, EPA released its Interim Registration Review Decision on

glyphosate ("Interim Decision"). See Interim Decision, available at

https://www.epa.gov/ingredients-use d- pesticide-products/interim-registration-review-decision-

and-responses-public (last visited June 15, 2021). The Interim Decision summarized EPA's

conclusions (as of the date of signature) on the risks and benefits associated with glyphosate. Id.

EPA concluded that there were certain low-cost measures that would be appropriate to mitigate

potential ecological risks posed by glyphosate. These included (1) restrictions on how and when

glyphosate can be sprayed, in order to reduce drift of such sprays, (2) a "non-target organism

advisory," and (3) herbicide-resistance measures.

The Interim Decision noted aspects of EPA's registration review that EPA had not yet

finalized.[2] This included working with USFWS and NMFS to develop methodologies for

conducting a national threatened and endangered species assessment for pesticides in accordance

with the ESA. EPA stated it "will complete its listed species assessment and any necessary

_____

government websites are inherently authentic or self-authenticating).

[2] Additionally, on May 18, 2021, in pending litigation over the Interim Decision, EPA moved to
voluntarily remand without vacatur portions of the Interim Decision analyzing ecological risks
and other potential (non-human-health) costs associated with glyphosate. (See Doc. No. 82-1,
Motion for Partial Remand Without Vacatur, Nat'l Res. Def. Council v. U.S. EPA, No. 20-70787
(9th Cir. filed May 18, 2021)).

consultation with the Services for glyphosate prior to completing the glyphosate registration review." Id. at 3. In November 2020, EPA issued and solicited public comment on a draft Biological Evaluation, analyzing the potential effects of glyphosate on ESA-listed species. See Draft National Level Listed Species Biological Evaluation for Glyphosate ("draft Biological Evaluation"), available at https://www.epa.gov/endangered-species/draft-nationa l-level-listed-species-biological-evaluation-glyphosate (last visited June 11, 2021). EPA is in the process of considering public comments and developing its final Biological Evaluation. As EPA has explained in a press release, "[b]iological evaluations are the beginning of EPA's Endangered Species Act consultation review process for pesticides where the agency determines whether the pesticide 'may affect' one or more individuals of a listed species and their designated critical habitats." EPA Releases Draft Biological Evaluation for Glyphosate ("Press Release") (Nov. 25, 2020), available at https://www.epa.gov/pesticides/epa-releases-draft-biological-evaluation-glyphosate (last visited June 11, 2021). If the final Biological Evaluation concludes that glyphosate is likely to adversely affect any ESA-listed species, EPA has made clear that it will initiate formal consultation with USFWS and/or NMFS. See id.

   5. **Procedural History**

      This is the third lawsuit filed by Plaintiff seeking to enjoin FBEMC's spraying of herbicides and various federal actions related to herbicides products containing glyphosate. On June 1, 2017, Plaintiff filed an ESA citizen suit and sought a TRO against FBEMC, seeking to enjoin FBEMC from its 2017 herbicide spraying of its ROWs on Roan Mountain on the basis that it would constitute an illegal "taking" of protected species. Plaintiff also "challenge[d] EPA's administrative approval of the use of [certain EPA-registered] herbicides in applications that would threaten endangered species" and sought to enjoin the federal defendants to "enforce

the provisions of the ESA in order to protect the critical habitats and threatened/endangered species residing on Roan Mountain." <u>Orr v. EPA</u>, No. 1:17-CV-00141-MR- DLH, 2017 WL 2434779, at *1 (W.D.N.C. June 5, 2017) ("Orr I"). The Court denied Plaintiff's motion for a TRO and sua sponte dismissed the case on June 5, 2017, because Plaintiff failed to meet the statutory 60-day notice requirement applicable to ESA citizen suits and his claim against the private defendants under 42 U.S.C. § 1983 was frivolous. <u>Orr I</u>, 2017 WL 2434779, at *2. Plaintiff appealed the decision to the Fourth Circuit, but the appeal was dismissed for failure to prosecute. <u>Orr v. EPA</u>, No. 17-1705, 2017 WL 5997422 (4th Cir. Aug. 7, 2017).

On July 19, 2019, Plaintiff filed a second lawsuit and motion for a TRO, again seeking to stop FBEMC's spraying of herbicides on its right-of-way easement on Roan Mountain by bringing claims against FBEMC and several federal agencies. (<u>See</u> Compl., Doc. No. 1, <u>Orr v. EPA</u>, No. 1:19-CV-00226 (W.D.N.C. filed July 19, 2019) ("<u>Orr II</u>"); Mot. for TRO, Doc. No. 3, <u>Orr II</u>, No. 1:19-CV- 00226 (W.D.N.C. filed July 19, 2019). On August 6, 2019, this Court denied Plaintiff's motion for a TRO as moot, because the spraying in Plaintiff's area had already been completed for the year. (Doc. No. 12, <u>Orr II</u>, No. 1:19-CV-00226 (W.D.N.C. Aug. 6, 2019)). On December 5, 2019, in response to motions to dismiss filed by Federal Defendants and FBEMC Defendants, Mr. Orr moved to amend his complaint. (<u>See</u> Doc. No. 29, "Joint Motion for Leave to File Out of Time and to File Amended Complaint," <u>Orr II</u>, No. 1:19-CV-00226 (W.D.N.C. filed Dec. 5, 2019)).

With leave of court, Plaintiff filed his amended complaint in the <u>Orr II</u> case on January 14, 2020. Plaintiff's amended complaint alleged that FBEMC's planned spraying of Rodeo and Polaris herbicides on its ROW easements on or near Roan Mountain violated Section 9 of the ESA and that the federal agencies also violated the ESA "by failing to enforce/apply the

provisions of ESA and its regulations, allowing FBEMC to employ EPA registered herbicides in such a manner to adversely modify protected species habitats and illegally 'Take' threatened/endangered species in violation of ESA Section 9." (See Doc. No. 35, "Orr II Am. Compl." at 1, 10, Orr II, No. 1:19-CV-00226 (W.D.N.C. filed Jan. 14 2020)). Plaintiff also alleged that EPA and USFWS had "violated their legal duties under the ESA . . . by failing to properly consult with each other to insure Rodeo, Polaris herbicides and other registered pesticides/herbicides are not used in a manner to harm/jeopardize any listed species . . . ." (Id. at 10) (citing ESA Section 7(a)(2), 16 U.S.C. § 1536(a)(2)). Plaintiff additionally raised FIFRA claims, challenging EPA's registration of various herbicides, including glyphosate-containing herbicides. (Id. at 11). Plaintiff recognized that "EPA may be undergoing a re-registration review for Glyphosate." (Id. at 13).

On May 15, 2020, this Court granted Federal Defendants' and Defendant FBEMC's motions to dismiss Plaintiff's amended complaint and dismissed the case with prejudice. Orr II, No. 1:19-CV-00226-MOC-WCM, 2020 WL 2512985 (W.D.N.C. May 15, 2020). On the claims that USFWS and EPA violated Section 7 or Section 9 of the ESA by allowing the use of herbicides that allegedly harmed listed species, the Court held that Plaintiff had not satisfied the ESA's 60- day notice requirement. Id. at *5-7. The Court further held that "Plaintiff's claim that the federal Defendants are violating the ESA for failing to monitor, enforce, or otherwise apply the ESA against third-parties in violation of ESA's Section 9 is not cognizable as a matter of law and this Court does not have jurisdiction to hear such claim." Id. at *7. The Court next determined that it lacked "jurisdiction to consider any claim challenging the FIFRA registrations of Glyphosate and Imazapyr (Rodeo and Polaris), as FIFRA's jurisdictional provision (7 U.S.C. § 136n) is not satisfied here." Id. at *9. In addition, even if the Court had jurisdiction, many of

Plaintiff's FIFRA complaints involved actions that were past the six-year statute of limitations or were not final agency actions subject to judicial review. Id. The Court also made clear that "[t]o the extent Plaintiff's Amended Complaint alleges the ESA citizen-suit provision (16 U.S.C. § 1540(g)(1)(A)) gives this Court subject-matter jurisdiction to entertain a request to cancel FIFRA-registered herbicides/pesticides, such claim fails as a matter of law." Id. Finally, the Court held, alternatively, Plaintiff lacked standing because he had not alleged an adequate concrete, particularized, actual, or imminent injury in fact or the required causal connection. Id. at *12. Plaintiff appealed the Court's order dismissing his claims, and the case is pending before the Fourth Circuit. See Orr v. EPA, No. 21-1222 (4th Cir.).

Throughout the past four years, Plaintiff has issued various letters and comments styled as "notices of intent to sue." The most recent, and the only purported notice sent after the filing of his 2019 lawsuit, is dated March 12, 2021. (See Doc. Nos. 2-3, 2-4, 2-5).

On June 7, 2021, Plaintiff filed the present lawsuit. (See Doc. No. 1). The same day Plaintiff moved for a TRO, asking this Court to enjoin FBEMC's spraying of herbicides on its ROW easements on or near Roan Mountain, to require EPA to engage in ESA consultation, and to require EPA to "enforce" Section 7(d) of the ESA by preventing FBEMC's use of glyphosate-containing herbicides during the consultation.

## II.     TRO STANDARDS

Applications for issuance of a TRO are governed by FED. R. CIV. P. 65(b). However, "when the opposing party actually receives notice of the application for a restraining order, the procedure that is followed does not differ functionally from that on an application for a preliminary injunction." Wright and Miller, 11A Fed. Prac. & Proc. Civ. § 2951 (3d ed.).

In evaluating a request for a TRO, the court considers the same factors applied for a preliminary injunction. Pettis v. Law Office of Hutchens, Senter, Kellam & Pettit, No. 3:13-CV-00147-FDW, 2014 WL 526105, at *1 (W.D.N.C. Feb. 7, 2014) (citing Hoechst Diafoil Co. v. Nan Ya Plastics Corp., 174 F.3d 411 (4th Cir. 1999)). In assessing such factors, a plaintiff must demonstrate that: (1) it is likely to succeed on the merits; (2) it will likely suffer irreparable harm absent an injunction; (3) the balance of hardships weighs in its favor; and (4) the injunction is in the public interest. League of Women Voters of N. Carolina v. N. Carolina, 769 F.3d 224, 236 (4th Cir. 2014), cert. denied, 135 S. Ct. 1735 (2015) (citing Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008)). It is "unnecessary to address all four factors when one or more ha[s] not been satisfied." Henderson v. Bluefield Hosp. Co., 902 F.3d 432, 439 (4th Cir. 2018). Preliminary injunctions should not be granted when there is only a "possibility of irreparable harm" because a preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter, 555 U.S. at 22 (citing Mazurek v. Armstrong, 520 U.S. 968, 972 (1997) (per curiam) (emphasis added)).

In evaluating likelihood of success on the merits, the court should consider the standard of review applicable to the merits of Plaintiff's claims. See Am. Bioscience, Inc. v. Thompson, 243 F.3d 579, 582 (D.C. Cir. 2001). The standard of review in the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, governs review of ESA and FIFRA claims. See Defs. of Wildlife v. U.S. Dep't of Interior, 931 F.3d 339, 345 (4th Cir. 2019). "The scope of review under the [APA] is narrow and a court is not to substitute its judgment for that of the agency." Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983). A decision is only "arbitrary and capricious" if the agency "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the

agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." Id.

## III.    DISCUSSION

The Court has closely read the Complaint, the documents attached thereto, and the arguments stated in the instant motion. The Court finds that Plaintiff has, at least initially, failed to make the required showing for a TRO.

At this stage, the Court proceeds no further than the first step of the Winter test and concludes that Plaintiff is not likely to succeed on the merits. First, it seems that most of Plaintiff's claims are likely barred by claim or issue preclusion; however, there are some facts and circumstances in this cases that are different from prior cases. As such, there is the possibility that no form of preclusion will apply. Second, it also seems likely that Plaintiff did not provide sufficient notice of his claim under Section 7(d) of the ESA. Third, it appears that Section 7(d) does not apply outside of the consultation process. Because the Court finds that Plaintiff has not shown that he is likely to succeed on the merits, the Court holds that the Motion for TRO is denied. However, this case is not dismissed and the Court looks forward to receiving further briefing from all parties at the preliminary injunction stage.

Finally, because the parties agree that the U.S. Forest Service should not be a Defendant in this case, the Court dismisses Plaintiff's claims against the U.S. Forest Service.

## IV.    CONCLUSION

In short, at least one factor of the Winter test has not been satisfied. The Court therefore concludes that a Temporary Restraining Order is an inappropriate remedy as Plaintiff has not met his burden under the Winter test.

**ORDER**

**IT IS, THEREFORE, ORDERED** that Plaintiff's Motion for a Temporary Restraining

Order (Doc. No. 3) is **DENIED** and all claims against Defendant U.S. Forest Service are

**DISMISSED**. This case will now proceed to preliminary injunction briefing and hearing.


Signed: June 23, 2021

Max O. Cogburn Jr.
United States District Judge